UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CESAR OMAR SANDOVAL QUINTANA,<br><br>Petitioner,<br>v.<br>JOCELYN MERCEDES QUINTANA DOLORES, *et al.*,<br><br>Respondent. | Case No. 3:19-cv-00730-MMD-WGC<br><br>ORDER |

**I.  SUMMARY**

Petitioner Cesar Omar Sandoval Quintana, a citizen and resident of Peru, filed a petition and Verified Complaint against Respondent Jocelyn Mercedes Quintana Dolores under the Hague Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Convention"), as implemented by the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9011 (the "ICARA"). (ECF No. 1 (the "Verified Complaint").) Petitioner seeks the return of his minor child, A.O.S.Q., to Peru, so that an ongoing custody dispute between Petitioner and Respondent may be resolved there. (*Id.*) Respondent is allegedly residing with A.O.S.Q. in Fallon, Nevada. (*Id.* at 2.) Before the Court is Petitioner's *ex parte* motion for entry of a temporary restraining order, which includes an application for a warrant seeking physical custody of A.O.S.Q., and a request for an expedited hearing (the "Motion"). (ECF No. 5.) The Court held a hearing on the Motion at 8 a.m. on Thursday, December 12, 2019 (the "Hearing"). (ECF No. 7.) Because Petitioner has demonstrated entitlement to a temporary restraining order, and as further explained below, the Court will grant the Motion.

///

///

## II. BACKGROUND

The following facts are taken from the Verified Complaint. (ECF No. 1.) Petitioner and Respondent were married in Peru, and lived there with their son A.O.S.Q, who is currently nine years old. (*Id.* at 2.) They had been living separately, but sharing custody of A.O.S.Q., since 2012. (*Id.* at 3.) The parties were formally granted joint custody of A.O.S.Q. by a Peruvian court in 2014. (*Id.*) Petitioner paid child support to Respondent, and covered A.O.S.Q.'s expenses like school and insurance. (*Id.*)

In March 2017, Respondent and her then-boyfriend Mariano admitted to psychologically abusing A.O.S.Q. by fighting in front of him, and Petitioner was awarded temporary sole custody of A.O.S.Q in April 2017. (*Id.* at 4.) In 2016, Respondent filed a request with a Peruvian court to take A.O.S.Q. out of Peru—to visit Respondent's mother in Oregon—but her request was denied in November 2017 after Respondent failed to attend a hearing. (*Id.* at 5.) Nonetheless, Respondent left Peru for the United States in September 2018 with A.O.S.Q. (*Id.*) In two emails to Petitioner, she alleged that Petitioner had abused her, mislead the Peruvian court that made the custody determinations, and attempted to turn A.O.S.Q. against her. (*Id.*; *see also* ECF No. 1-5 at 55-58.) She also stated she intended to keep A.O.S.Q. in the United States in those emails. (ECF No. 1-5 at 58.)

Petitioner has not seen A.O.S.Q. since. (ECF No. 1 at 6.) In October 2018, he filed a criminal complaint against Respondent for child abduction in Peru, a separate criminal case for kidnapping was opened against Respondent, a court banned Respondent from travelling outside of Peru, and awarded Petitioner temporary sole custody of A.O.S.Q. (*Id.* at 6.) In April 2019, the U.S. Embassy confirmed to Peruvian officials that Respondent and A.O.S.Q. entered the U.S. in October 2018. (*Id.*) Petitioner alleges Respondent only had a tourist visa to enter the U.S. and thus committed fraud to enter the country because she intended to—and has—remained there. (*Id.*) Petitioner asserts that it took him several months to learn that Respondent had abducted their child and removed him to the United

States,[1] and he has made efforts to locate them since. (*Id.* at 6, 8.) He has not had any contact with his child since and expressed concerns about the psychological damage that the separation has caused to his son. (*Id.* at 6.)

Petitioner then requested A.O.S.Q.'s return to Peru through the Convention process, where his request to the Peruvian Ministry of Vulnerable Populations was transmitted to the U.S. State Department. (*Id.* at 6-7.) Petitioner then filed this petition, alleging that Respondent wrongfully took A.O.S.Q. to the U.S., and is wrongfully retaining him in Fallon, Nevada where Petitioner believes Respondent and A.O.S.Q. are residing with Respondent's mother—against Petitioner's wishes and in violation of the custody rights awarded to him by Peruvian courts. (*Id.* at 2, 7-10.) Petitioner also seeks recovery of his attorneys' fees and costs. (*Id.* at 10-12.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders, and requires that a motion for a temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.*, 181 F. Supp. 2d 1111, 1126 (E.D. Cal. 2001). Further, a temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."

---

[1] In September 2018, Respondent told Petitioner A.O.S.Q. would miss the first week of school in October and that Petitioner could pick A.O.S.Q. at her house on October 7, 2018. (ECF No. 1 at 5.) However, Respondent and A.O.S.Q. were not at the house on the arranged date. (*Id.*)

3

*Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

A preliminary injunction may be issued if a plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. The Ninth Circuit has held that "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011).

## IV. DISCUSSION

The *Winter* factors favor entering an *ex parte* temporary restraining order here. But the Court first addresses the notice requirement under Fed. R. Civ. P. 65(b).[2] Petitioner explains that he has not attempted to provide notice of the Motion to Respondent because Respondent removed Petitioner's son from Peru without his consent, and in contravention of a Peruvian court's denial of her request, and smuggled him into the U.S. on a visa that required her to return after six months, which she has not done. (ECF No. 5 at 2.) Petitioner further argues that Respondent may try to further secret herself and the child away to avoid being returned to Peru. (*Id.*)

The Court finds that Petitioner has demonstrated sufficient need for the Motion to be heard *ex parte*. Respondent allegedly brought A.O.S.Q. to the U.S. in contravention

---

[2]Fed. R. Civ. P 65(c) normally also requires "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." But as stated on the record at the Hearing, here, the Court finds that no bond is necessary because counsel is appearing *pro bono,* and Petitioner has travelled from Peru at great personal expense even though he only has an annual income of $10,000 U.S., and will remain in the U.S. for the duration of the upcoming proceedings in this case.

4

of a Peruvian court order, and against Petitioner's wishes, which suggests she would be willing to flee with A.O.S.Q. to avoid responding to the Motion and to attempt to avoid an order of this Court. (ECF No. 1 at 5.) Further, if Petitioner is correct that Respondent is no longer authorized to be in this country, her reasonable fear of deportation counsels against giving notice to Respondent, as she may incorrectly interpret this proceeding as a deportation proceeding, and thus go into hiding rather than appear before this Court. But to be clear, this is not a deportation proceeding.

Moving to the *Winter* factors, Petitioner has shown he is likely to succeed on the merits of his claim. (ECF No. 5 at 13-15.) "To establish a claim for return, a petitioner must prove: (1) the child was wrongfully removed or retained, (2) from his or her habitual residence, (3) in violation of the custody rights of the left-behind parent, and (4) the left-behind parent was exercising those rights." *Torres Garcia v. Guzman Galicia*, Case No. 2:19-cv-00799-JAD-BNW, 2019 WL 4197611, at *3 (D. Nev. Aug. 15, 2019), *report and recommendation adopted*, 2019 WL 4192729 (D. Nev. Sept. 4, 2019) (citing *Mozes v. Mozes*, 239 F.3d 1067, 1070 (9th Cir. 2001)).

Looking to the Verified Complaint, Petitioner alleges that A.O.S.Q. habitually resided in Peru before Respondent smuggled him into the U.S. in contravention of a Peruvian court's denial of her travel request. (ECF No. 1 at 2, 5.) Thus, the first two *Torres Garcia* factors are satisfied. *See* 2019 WL 4197611, at *3 (stating the factors). Further, Petitioner had joint and then sole custody of A.O.S.Q. per Peruvian court orders, provided for A.O.S.Q., and spent considerable time with A.O.S.Q. (ECF No. 1 at 3.) Thus, the second two *Torres Garcia* factors are also satisfied for these purposes. *See* 2019 WL 4197611, at *3 (stating the factors). Petitioner has therefore shown he is likely to prevail on the merits of his claim that A.O.S.Q. was wrongfully removed from his habitual residence in Peru. *See Winter*, 555 U.S. at 20 (providing that likelihood of success on the merits is one of the four factors courts consider when addressing a motion for preliminary injunction).

Further, the Verified Complaint also shows both that Petitioner will be irreparably harmed if an injunction does not issue, and the balance of equities tips in his favor. Thus, the second and third *Winter* factors favor granting Petitioner's request for an injunction. More specifically, Petitioner has shown through the Verified Complaint that he has custodial rights regarding A.O.S.Q., and cares for his son. (ECF No. 1 at 1-6.) If the Court does not issue a temporary restraining order here, he may never see his son again—in contravention of his custodial rights—particularly since it took him over a year to locate his son's potential whereabouts. Thus, he would be harmed if an injunction does not issue. Further, "[g]iven the risk that Respondent could further conceal the location of [A.O.S.Q.], the Court finds that Petitioner will likely be irreparably harmed in the absence of the requested relief to maintain the status quo." *Culculoglu v. Culculoglu*, Case No. 2:13-cv-00446-GMN, 2013 WL 1413231, at *5 (D. Nev. Apr. 4, 2013) (granting temporary restraining order in similar case). The equities do not tip in Respondent's favor because she took him from Peru even after a court declined her travel request. (ECF No. 1 at 4-6.) The equities also tip in Petitioner's favor given the risk that Respondent could continue to conceal A.O.S.Q. *See Culculoglu*, 2013 WL 1413231, at *5.

Finally, the Court is persuaded by Petitioner's argument that issuing a temporary restraining order would not harm any critical public interest. (ECF No. 5 at 17-18.) The relief Petitioner ultimately seeks here—the return of A.O.S.Q. to Peru so that Petitioner and Respondent's custody rights may be further adjudicated under Peruvian law—is both authorized under the Convention and consistent with federal and state law implementing the Convention. *See Culculoglu*, 2013 WL 1413231, at *5 (finding the public interest prong weighed in favor of granting a temporary restraining order in a similar case while noting that request was consistent with federal law); *see also* NRS § 125A.435 ("a court of this state may enforce an order for the return of a child made pursuant to the Hague Convention on the Civil Aspects of International Child Abduction as if it were a child custody determination.").

In sum, the Court will grant Petitioner's Motion because the *Winter* factors favor granting him a temporary restraining order, and Respondent's lack of notice at this point in this case is not fatal to Petitioner's request under the circumstances.

Moreover, given the credible risk that Respondent will attempt to flee this Court's jurisdiction or further secret A.O.S.Q. away, the Court will direct the United States Marshals Service to attempt to locate A.O.S.Q. when they effect service of this order, and immediately transfer custody of A.O.S.Q. to Petitioner pending the outcome of the preliminary injunction hearing ("PI Hearing") the Court will also hold in this case—all as further specified below. *See* 22 U.S.C. § 9004(a)-(b) (providing that a court may take appropriate action "to protect the well-being of the child involved or to prevent the child's further removal or concealment before the final disposition of the petition" so long as the applicable state law requirements are satisfied); *see also* N.R.S. §§ 125A.52, 125D.200 (providing Nevada state courts may arrange for temporary transfers of child custody when there is a credible risk the child will be moved).

## V.     CONCLUSION

The Court notes that Petitioner made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion.

It is therefore ordered that Petitioner's Motion (ECF No. 5) is granted as further specified below.

It is further ordered that Respondent is prohibited from removing Petitioner's son, A.O.S.Q., from the jurisdiction of this Court pending the PI Hearing.

It is further ordered that no person acting in concert or participating with Respondent may take any action to remove A.O.S.Q. from the jurisdiction of this Court pending a determination on the merits of this petition, or interfere with the United States Marshals Service's execution of this order.

It is further ordered that the Court will hold a hearing on this order on Thursday, December 19, 2019 at 2 p.m. in Courtroom 5 of this United States District Court, 400 S. Virginia St., Reno, Nevada 89501 (the "TRO Hearing"). At the TRO Hearing, the Court will hear any arguments for extending, modifying, or dissolving this injunction. **Respondent must file a written response to Petitioner's Motion by 5 p.m. on Tuesday, December 17, 2019. If Respondent does not file a written response to Petitioner's Motion by that time, the Court will vacate the TRO Hearing.**

It is further ordered that the PI Hearing and trial on the merits of the Verified Complaint is hereby scheduled to be held on December 27, 2019 at 10 a.m. in Courtroom 5 of this United States District Court, 400 S. Virginia St., Reno, Nevada 89501. Respondent must file her response to Petitioner's Motion and the Verified Complaint by Monday, December 23, 2019. Petitioner may then file a reply by Thursday, December 26, 2019. The PI Hearing will proceed regardless of whether Respondent files any written response or appears before this Court.

It is further ordered that Respondent must show cause at the PI Hearing why A.O.S.Q. should not be returned to Peru, accompanied by Petitioner, where further and appropriate custody determinations can be made under Peruvian law, and why the other relief requested in the Verified Complaint should not be granted.

It is further ordered that the trial of this action on the merits is advanced and consolidated with the PI Hearing. Thus, the PI Hearing will finally determine the merits of this case.

It is further ordered that the United States Marshals Service will serve Respondent with a copy of this order at 7430 Casey Road, Fallon, Nevada, 89406 as soon as practicable, along with a copy of the other pleadings filed by Petitioner in this case (ECF Nos. 1, 5), in an attempt to ensure Respondent's appearance at the TRO Hearing and PI Hearing in Reno. To execute this order, the United States Marshals Service may enlist the assistance of other law enforcement authorities, including the local police.

It is further ordered that the United States Marshals Service will attempt to locate and take physical custody of the 9-year old A.O.S.Q. at the time they effect service solely for the purpose of transferring A.O.S.Q. to Petitioner's temporary physical custody. A.O.S.Q. will then remain in Petitioner's temporary custody pending the outcome of the PI Hearing, and at least until the PI Hearing.

It is further ordered that Petitioner and the United States Marshals Service will coordinate on the logistics of service and transferring of custody such that A.O.S.Q. may be immediately transferred to Petitioner if the United States Marshals Service is able to locate A.O.S.Q. when they effect service of this order.

**It is further ordered that Respondent must immediately surrender physical custody of A.O.S.Q. to Petitioner pending the outcome of the PI Hearing, as facilitated by the United States Marshals Service at the time they effect service of this order. Failure to comply may result in the Court holding Respondent in contempt of Court until she complies. As a warning to Respondent, this could include the Court ordering Respondent's arrest if she does not comply with this order, including if she resists allowing the United States Marshals Service to take custody of A.O.S.Q. for the purpose of transferring custody to Petitioner.**

It is further ordered that, if Respondent refuses to immediately surrender physical custody of A.O.S.Q., the United States Marshals Service is authorized to use reasonable force to take physical custody of A.O.S.Q., and enter 7430 Casey Road, Fallon, Nevada, 89406 to search the premises for A.O.S.Q.—to locate A.O.S.Q. and immediately transfer physical custody of A.O.S.Q. to Petitioner pending the outcome of the PI Hearing.

It is further ordered that Respondent must immediately deliver to the United States Marshals Service, for safekeeping, A.O.S.Q.'s passport if it is in Respondent's possession, custody, or control, and must further notify the United States Marshals Service if Respondent knows of any person having possession of such a passport.

The United States Marshals Service is authorized to receive and to hold any such passport pending further instructions from this Court.

It is further ordered that Respondent must be present at both the TRO Hearing and the PI Hearing in Reno.

It is further ordered that Petitioner must be present at the TRO Hearing and the PI Hearing in Reno, and must also bring A.O.S.Q. to those hearings if A.O.S.Q. is in his custody.

The Court will not hesitate to order the arrest of any person who violates this order precluding the removal of A.O.S.Q. from the jurisdiction of this Court pending the PI Hearing and a determination on the merits of this petition.

DATED THIS 12th day of December 2019.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE